```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ZACHARY BULL,

                        Plaintiff,            13-cv-0032(MAT)

        v.                                    **DECISION**
                                              **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff Zachary Bull ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##8,10.

## BACKGROUND

Plaintiff applied for SSI on October 3, 2011, alleging disability beginning July 24, 2008 due to Spinocerebellar Ataxia ("SCA"), severe leg pain, depression, and bipolar disorder. T. 36-46, 120-24, 144-45. His claim was initially denied on January 19, 2012, and a hearing was requested before an Administrative Law Judge ("ALJ") on February 2, 2012. T. 89-91. Plaintiff appeared

---

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

with counsel and testified at a hearing on June 26, 2012 before ALJ Timothy Trost in Buffalo, New York. T. 31-51. A written decision was issued on July 10, 2012, finding that Plaintiff was not disabled. T. 22-30.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"),[2] the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since October 3, 2011; (2) he suffered from the severe impairment of SCA and non-severe impairments of myopic astigmatism, affective disorder, anxiety disorder, and substance addiction disorder; (3) his severe impairment did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpart P, Appx. 1, and Plaintiff retained the residual functional capacity ("RFC") to perform the exertional demands of sedentary work with limitations in standing and walking (2 hours), sitting (6 hours), lifting and carrying 10 pounds, and occasional breaks with respect to repetitive grasping; (4) Plaintiff had no past relevant work; and (5) Plaintiff was cable of making an adjustment to other work in national economy, resulting in a finding of no disability. T. 22-30.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request

---

[2] See 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).

for review on November 20, 2012, T. 4-6. Plaintiff then filed this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Dkt.#1.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision is supported by substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#8-1) 11-15. Plaintiff's motion alleges that the ALJ's decision is erroneous because it is not supported by substantial evidence contained in the record, or is legally deficient, and therefore he is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#10-1) 7-19.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does

not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. Medical Evidence

### A.  Medical Evidence Prior to the Relevant Period

When he was 14-years old, Plaintiff received both inpatient and outpatient mental health treatment at Brylin Hospital for depression, suicidal thoughts, aggressive outbursts, and explosive behavior from April to November, 2005. T. 182-233. Upon discharge, Plaintiff denied lethal thoughts, psychotic symptoms, and depressive feelings. T. 204. He was noted to have average IQ, attention span, and memory, with very poor impulse control. Id. Diagnoses were oppositional defiant disorder, history of SCA, and behavioral problems. Id. Medications were Clonidine, Seroquel, Neurontin, and Celexa. T. 207. His condition was reported as stable both medically and psychiatrically. Id.

In April, 2008, Dr. Alexander Selioutski, a former treating physician, completed an Orthopedic and Miscellaneous Report for the New York State Office of Vocational and Educational Services for Individuals with Disabilities. T. 246. Therein, he stated that Plaintiff's work-related restrictions were avoiding standing and driving; walking/stooping/bending 1-2 hours per day; and sitting 2-3 hours per day. Id. Dr. Selioutski opined that Plaintiff was permanently disabled based on his last examination of Plaintiff in December, 2007. T. 247.

**B.    Treating Physicians**

In May of 2008, Plaintiff visited his primary care physicians at Family Health Services for a check-up. The attending physician noted that Plaintiff had "congenital progressive cerebellar deterioration," and characterized the condition as stable. T. 248. Plaintiff appeared healthy and well developed with normal head/face, respiratory, and cardiovascular examinations. Id.

In a Referral Response Form dated July 24, 2009, Plaintiff's neurlogist Dr. Susan Kerr of Kaleida Health noted "some increase" in pain but neurologically generally unchanged, and that Plaintiff's psychological status appeared to have improved. T. 412. She increased Plaintiff's Neurontin to 900mg.[3] Id.

A follow-up visit to his primary care physicians in July of 2009 indicated that Plaintiff's physical and mental health was stable. T. 251.

The following month, Plaintiff saw Dr. Kerr who noted that Plaintiff complained of memory problems, constant tripping, and prominent pain.  T. 415. She decreased Plaintiff's Neurontin and recommended a "neuro psych" test. T. 253. No such test appears in the record.

On year later, in August, 2010, Plaintiff overdosed on his Gabapentin medication and was admitted to the Erie County Medical

---

[3] Neurontin or gabapentin is an anticonvulsant medication that affects chemicals and nerves in the body involved in the cause of seizures and some types of pain. See http://www.drugs.com/neurontin.html (last accessed 11/19/2014). The names are used interchangeably throughout the medical records and in this Decision and Order.

Center for a Comprehensive Psychiatric Emergency Program Assessment. T. 235-242. The attending physician noted that Plaintiff stated that he "had no intention of killing himself and just wanted his girlfriend to pay attention to him." T. 235. He was noted to lack remorse and "appear[ed] to minimize what he ha[d] done." Id. Upon examination, Plaintiff denied anxiety, depression, and emotional problems, and had normal thought content, appearance, attitude, and behavior. T. 236. Plaintiff was diagnosed with adjustment disorder with depressed mood and suffered from relationship problems. T. 237.

Plaintiff reported to Dr. Kerr on January 12, 2011 that the Neurontin helped his pain, which was sometimes "stabbing" or "tearing." T. 255. He stated that he had more stiffness in the morning and memory problems. Id. Plaintiff was noted to have unchanged mild cerebellar degeneration, mild dystaxia, and intermittent cramping. T. 256. Plaintiff's Neurontin was increased and he was to follow-up in one year. Id.

In November, 2011, Plaintiff again saw Dr. Kerr and reported increased pain, some muscle pain, and significant fatigue. T. 423. Dr. Kerr noted that Plaintiff's muscle strength, gait, and bulk were abnormal, and his SCA was unchanged. T. 424.

The following month, Dr. Kerr completed a State Disability Form indicating that she examined Plaintiff on November 9, 2011, and found that Plaintiff was ambulatory with normal appearing gait, fatigued easily, and had a lot of pain in his legs. T. 304. Though

Plaintiff had sensory loss in the lower extremities, his manipulative abilities were not affected. Id.

Dr. N. Silvestri of Kaleida Health saw Plaintiff on May 25, 2012. The physician reported that Plaintiff's strength was normal, with abnormal sensation, gait, and station, and noted that his SCA had slightly progressed since his last visit 6 months prior, which was to be expected with that particular type of disorder. He counseled Plaintiff regarding smoking cessation and recommended physical and occupational therapy. T. 425.

### C.   Consultative Examinations

Plaintiff was consultatively examined by Rachel Hill, Ph.D., on December 8, 2011, during which Plaintiff reported a history of suicide attempts, difficulty falling asleep, depressive symptoms, and poor appetite. T. 296. Dr. Hill noted no manic symptoms, no thought disorder, and no cognitive symptoms. Id. Plaintiff drank three to five times per week to the point of drunkenness, and Dr. Hill noted some symptoms of alcohol dependance. Id.

Plaintiff's mental status examination was normal, showing average intellectual functioning, fair to good insight, and fair judgment. Plaintiff took care of personal needs (dressing, bathing, grooming, cooking, chores, shopping, managing money), socialized with friends and his girlfriend, and got along with his family. T. 298. His hobbies were playing video games, playing guitar, going to church, and attending acting classes. Id. Plaintiff could follow and understand simple directions and instructions, perform simple

tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make reasonable decisions. He related appropriately well with others and dealt with stress "okay." Id. Dr. Hill opined that while Plaintiff did have a psychiatric problem, his "greatest difficulties are being caused by his physical problems." Id. Dr. Hill recommended counseling. Id.

The same day Plaintiff was examined by Dr. Samuel Balderman, a consultative neurologist. T. 300. Plaintiff reported that he was diagnosed with SCA at age 5, and complained of weakness and numbness in the arms and legs. Id. He told the physician that he smoked one pack of cigarettes and drank alcohol daily. Id. He cared for his personal needs, cooked, cleaned, and did laundry. Id.

Plaintiff's physical examination was normal with the exception of "slight patchy sensory loss on the plantar surfaces of both feet." T. 301. Dr. Balderman opined that Plaintiff had active alcohol abuse and questionable history of SCA, was stable, and that the neurological examination was "basically normal" with any limitations relating mainly to Plaintiff's alcohol use. T. 302.

In January, 2012, M. Toten, a State agency psychological consultant reviewed the medical evidence and found that Plaintiff had mild restriction in activities of daily living, maintaining social functioning, concentration, persistence, or pace, and one to two repeated episodes of deterioration. T. 320. The consultant opined that the totality of the evidence did not indicate the

presence of significant limitations due to a psychiatric impairment. T. 322.

An opthomological consultative examination in January of 2012 revealed no visual functional limitation. T. 305-08.

### III. **Non-Medical Evidence**

Plaintiff was a 21-year old non-high school graduate at the time of his disability hearing. T. 51-52. He last worked a seasonal retail position, but could not continue the job on a permanent basis because it was "too strenuous." T. 53. Plaintiff testified that he was unable to work due to fatigue, soreness, sensory neuropathy, short-term memory loss, and poor coordination, in addition to depression, anxiety, and paranoia. T. 54-55, 64. He did not drive due to his coordination issues. Plaintiff characterized his condition as "get[ting] worse over time." T. 54.

Plaintiff told the ALJ that he socialized with friends weekly, that he had trouble with household chores and grocery shopping, and passed the time by napping during the day. T. 59-60. He smoked about one-and-one-half packs of cigarettes each day. T. 60.

With regard to his physical limitations, Plaintiff estimated that he could stand/walk/sit for about two hours per day and lift about 10-15 pounds. T. 61-62. He further testified that he had trouble with stairs, bending, and sitting for long periods of time. Id. He told the ALJ that he took Gabapentin for his nerve pain, but it made him drowsy. T. 64-65.

### IV. **The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

#### A.   **Treating Source Opinion**

Plaintiff first contends that the ALJ improperly disregarded the opinion of Dr. Selioutski, who reported that Plaintiff was permanently disabled in April of 2008. Pl. Mem. 7-13.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

The ALJ discounted the opinion of Dr. Selioutski for the reasons that the evidence was too old (based on an examination from 2007), and was inconsistent with later evidence from Plaintiff's treating physicians indicating that Plaintiff had mild cerebellar

degeneration. He further noted that the issue of whether an individual is disabled for purposes of Social Security benefits is reserved to the Commissioner and is not to be given any significant weight pursuant to Social Security Ruling ("SSR") 96-5p. Finally, the ALJ cited Section 20 C.F.R. 416.927(d) (setting forth the factors to determine the appropriate weight to assign a medical opinion), and concluded that Dr. Selioutski's opinion failed to be consistent and supported by the record as a whole. T. 29. The Court agrees.

First, the ALJ was correct in stating that he was not bound by Dr. Selioutski's opinion as to the ultimate issue of disability. See 20 C.F.R. § 404.1527(d)(1); see also Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Second, there exists substantial evidence in the record that Plaintiff's symptoms of SCA resulted in mild limitations. Progress notes from Plaintiff's treating physicians indicate that while Plaintiff had some difficulty with heel walking, his gait was generally intact and he was ambulatory. T. 304, 424. At a recent examination, it was noted that Plaintiff's fine manipulative abilities were not affected, despite some loss of sensation in the lower extremities. T. 304. His condition was consistently noted as stable throughout the medical record. T. 248, 251, 412, 424. Dr. Balderman, the consultative examiner, noted that Plaintiff's gait was normal upon examination, he could walk on his heels and toes without difficulty, and required no assistive devices. T. 301. Dr. Selioutski's opinion is contradicted by other

substantial evidence in the record, and was rendered three years prior to the relevant period under review. It is well-settled that "[c]onflicts in evidence ... are for the Commissioner to resolve." White v. Comm'r, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983)). The ALJ's decision to discount Dr. Selioutski's opinion that Plaintiff was permanently disabled is therefore supported by substantial evidence in the record.

Plaintiff's related argument that the ALJ neglected to resolve the conflicts between the medical opinions in the record must also fail. Pl. Mem. 13-16.

When an ALJ is faced with multiple and genuinely contradictory medical opinions, it falls to the ALJ to weigh the totality of the evidence in the record, both medical and non-medical, in order resolve the conflicts and make a proper RFC assessment. 20 C.F.R. § 404.1546; Aponte v. Sec'y, 728 F.2d 588, 591 (2d Cir. 1984). An ALJ may choose between properly submitted medical opinions provided he relies on medical evidence in the record and does not arbitrarily substitute his judgment for that of the medical professionals. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, when an ALJ's assessment is supported by substantial evidence in the record, his or her decision must be upheld. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

The ALJ evaluated Plaintiff's treatment records from Kaleida Health in 2007, 2009, and 2011, in which he was diagnosed with mild

cerebellar degeneration and was prescribed Neurontin. T. 27. He also discussed the treatment records from Family Health Services, (which contain the aforementioned medical source statement from Dr. Selioutski), the consultative examination by Dr. Balderman, and the report from Plaintiff's neurologist dated December 6, 2011. Id. Although Dr. Balderman "questioned" Plaintiff's diagnosis of SCA, his physical examination concluded that Plaintiff was normal. T. 300-02. Likewise, Dr. Kerr reported in her physical examinations of Plaintiff in December of 2011 that he was ambulatory and had normal appearing gait.  T. 304. Her notation that Plaintiff could walk approximately 100 feet is not inconsistent with the ALJ's RFC finding limiting Plaintiff to sedentary work. T. 26, 27; see 20 C.F.R. § 404.1567. A second treating physician at Kaleida Health also noted some normal findings upon examination, with a slight progression in Plaintiff's condition which was "to be expected." T. 425.

Where, as here, "the evidence of the record permits us to pick up the rationale of an ALJ's decision, the ALJ is not required to comment on every piece of testimony presented to him, or to describe why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Finney ex rel. B.R. v. Colvin, No. 13-CV-0543, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014)(citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). While it is preferable that the ALJ assign weight to each of the medical opinions, his failure to do so here

was harmless and does not require remand. See Arquinzoni v. Astrue, 2009 WL 1765252, *9 (W.D.N.Y. 2009) (ALJ's failure to assign weight to medical opinions was harmless; "[t]he ALJ engaged in a detailed discussion of the medical opinions in the record and his determination that the plaintiff was not disabled does not conflict with the medical opinions"); Pease v. Astrue, 2008 WL 4371779, *8 (N.D.N.Y. 2008) ("[t]he ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians [;] ... [t]herefore, the ALJ's failure to comment on the weight of the evidence was harmless error, and does not provide a basis for a remand to the Commissioner"); Jones v. Barnhart, 2003 WL 941722, *10 (S.D.N.Y. 2003) (same).

The ALJ therefore did not commit reversible error in failing to assign specific weight to the medical opinions, which were, in any event, largely consistent with one another.

### B.   Medical-Vocational Rules

Plaintiff also argues that the ALJ erred in failing to seek vocational expert testimony because the inability to grasp objects repetitively, without occasional comfort breaks, significantly limits Plaintiff's employment opportunities. Pl. Mem. 16-19.

Ruling 96-9p provides, in relevant part, "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 96-9p, 1996 WL 374185, at *8. It further notes that "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with

both hands will result in a significant erosion of the unskilled sedentary occupational base." Id. (emphasis in original).

The existence of a significant manipulative limitation caused by Plaintiff's condition is not supported by the evidence of record. Plaintiff's treating neurologist Dr. Kerr specifically found that Plaintiff's fine manipulative abilities were not affected by Plaintiff's SCA. T. 304. Likewise, Dr. Balderman noted that Plaintiff's hand and finger dexterity were intact, and his grip strength was full bilaterally. T. 301. Thus, the nonprecedential cases cited by Plaintiff (Pl. Mem. 18) are distinguishable. In Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991), the ALJ's finding that a claimant retained capacity to perform full range of sedentary work was not supported by the record where a physician's report provided objective medical evidence that the claimant's manual dexterity was "quite limited" and was "uncontradicted by anything else in the record," and thus a remand for vocational evidence was required. 947 F.2d at 996. Likewise, the Ninth Circuit in Fife v. Heckler, 767 F.2d 1427, 1431 (9th Cir. 1985) reversed the ALJ's decision finding that a claimaint was capable of light and sedentary work where the claimant had a permanent injury to one hand which precluded jobs which required bilateral manual dexterity and thus significantly compromised the range of work for which he was otherwise qualified.

Here, the ALJ, giving Plaintiff the benefit of the doubt, imposed an additional limitation to Plaintiff's RFC of "occasional

comfort breaks with repetitive grasping." T. 26.[4] In doing so, he properly found that the limitation of occasional comfort breaks would have "little to no effect on the occupational base of unskilled sedentary work." T. 30. As Plaintiff points out, there is no Second Circuit precedent finding that significant manipulative limitations significantly erode the sedentary occupational base, let alone a "less significant" limitation as exists in the present case. Pl. Mem. 18.

Although the Rulings provide that it may be "useful" to consult a vocational resource where manipulative limitation are less significant, the ALJ here was not obligated to obtain the testimony of a vocational expert. See Madonia v. Astrue, No. 09-CV-0552 NAM, 2011 WL 2470482, at * 8 (N.D.N.Y. June 2, 2011) ("[B]ecause Plaintiff was found capable of performing unskilled work, the ALJ was not obligated to obtain testimony from a VE...."); see also  20 C.F.R. Part 404, Subpart P Appx. 2, § 201.00(a) ("Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy.").

## CONCLUSION

For the foregoing reasons the Commissioner's motion for judgment on the pleadings (Dkt.#8) is granted, and Plaintiff's

---

[4] "Occasionally'" means occurring from very little up to one-third of the time . . . . Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." SSR 83-10, 1983 WL 31251, at *5.

cross-motion for judgment on the pleadings (Dkt.#10) is denied. The complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                          S/Michael A. Telesca

                                          MICHAEL A. TELESCA
                            United States District Judge

Dated:   Rochester, New York
        November 21, 2014